UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

R2 TECHNOLOGIES CORPORATION,

       *Plaintiff*,

  v.

MARCO RUBIO, *et al.*,

       *Defendants*.

Civil Action No. 24-369 (LLA)

**MEMORANDUM OPINION**

Plaintiff R2 Technologies Corporation ("R2 Technologies"), a technology and services company based in Alpharetta, Georgia, seeks to compel Defendants—Secretary of State Marco Rubio[1] and U.S. Consuls General Chris Hodges and Mike Hankey, in their official capacities—to adjudicate nonimmigrant H-1B visa applications for its employees, Ravi Mohan Kuruba and Sidharth Kandasamy. ECF No. 11 ¶ 1. R2 Technologies contends that Mr. Kuruba's and Mr. Kandasamy's visa applications have been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. ECF No. 11 ¶¶ 22-44. Defendants have moved to dismiss R2 Technologies' claims under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). ECF No. 12. For the reasons explained below, the court will dismiss under Rule 12(b)(6).

---

[1] Although R2 Technologies named former Secretary of State Antony J. Blinken as a defendant in its complaint, current Secretary of State Marco Rubio "is automatically substituted as a party" in his place pursuant to Federal Rule of Civil Procedure 25(d).

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The court draws the facts, accepted as true, from R2 Technologies' complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, allows employers to sponsor temporary, nonimmigrant workers "in a specialty occupation" for a H-1B visa. 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(a). An employer begins this process by requesting a "certified labor condition application from the Department of Labor" for the employee's occupational specialty. 8 C.F.R. § 214.2(h)(4)(i)(B)(1)(i). After receiving the certification, the employer must file a Petition for a Nonimmigrant Worker (Form I-129) with the U.S. Citizenship and Immigration Services ("USCIS"). *Id.* § 214.2(h)(2)(i)(A); *see* U.S. Dep't of State, *I-129, Petition for a Nonimmigrant Worker.*[2] This visa petition process must be completed before the employee "may apply for a visa." 8 C.F.R. § 214.2(h)(1)(i).

Next, the foreign national must complete the nonimmigrant visa application through the Department of State at the consular office corresponding to the jurisdiction in which they reside. 22 C.F.R. § 41.101(a)(1). Typically, the applicant must then appear for an in-person interview with a consular officer. *Id.* § 41.102. At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa." *Id.* § 41.121(a). If the consular officer determines that he does not have sufficient information to establish visa eligibility, he may "refuse" the visa pending further administrative processing under Section 221(g) of the INA, which typically consists of additional

---

[2] *Available at* https://perma.cc/DU8T-E92T.

information gathering.  U.S. Dep't of State, *Administrative Processing Information*[3]; *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

R2 Technologies filed Form I-129s for Mr. Kandasamy and Mr. Kuruba because it wishes to sponsor them for H1-B visas.  ECF No. 11 ¶ 2.  USCIS approved R2 Technologies' petition on behalf of Mr. Kandasamy on November 29, 2021, and Mr. Kandasamy subsequently applied for a H-1B visa at the U.S. Consulate General at Chennai.  *Id.* ¶ 12.  By January 11, 2023, Mr. Kandasamy had submitted the necessary additional forms, documentation, and fees to schedule his interview with the consular officer.  *Id.* ¶ 13.  On March 31, Mr. Kandasamy interviewed at the Chennai consulate, where he received a Section 221(g) notice for "additional administrative processing" without the consulate's requesting additional information.  ECF No. 11 ¶ 13; 8 U.S.C. § 1201(g).  Since then, Mr. Kandasamy has emailed the Chennai consulate and the U.S. consulate regarding the status of his application, receiving "a vague response indicating that no other documentation is required" and that his case is still being processed.  ECF No. 11 ¶ 14.  R2 Technologies has not yet received a final adjudication on Mr. Kandasamy's pending visa application.  *Id.* ¶ 18.

USCIS approved R2 Technologies' petition on behalf of Mr. Kuruba on February 13, 2023, and he subsequently applied for an H-1B visa.  *Id.* ¶ 15.  After interviewing at the U.S. Consulate General at Mumbai on March 31, he received a Section 221(g) notice indicating that additional documents were required and that his application "[had] been placed in pending status."  *Id.* ¶ 16.  By April 4, Mr. Kuruba had submitted the necessary additional forms, documentation, and fees.  *Id.*  Since then, Mr. Kuruba has emailed the consulate regarding the status of the application, but he has only received an automated email acknowledging the inquiry.  *Id.* ¶ 17.  Similarly, R2

---

[3] *Available at* https://perma.cc/UHN9-VYY2.

Technologies has not yet received a final adjudication on Mr. Kuruba's pending visa application. *Id.* ¶ 18.[4]

The delay in adjudication has "caused tremendous loss for the R2 Technologies' business and reputation." *Id.* ¶ 21. On February 7, 2024, R2 Technologies filed a petition for a writ of mandamus to compel the Secretary of State to adjudicate Mr. Kandasamy's and Mr. Kuruba's visa applications. ECF No. 11. R2 Technologies amended its petition on June 12 to add Mr. Hodges and Mr. Hankey as Defendants and to supplement its unreasonable delay claim under the APA. ECF No. 11. Defendants subsequently moved to dismiss the amended petition under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 12. The matter is now fully briefed. ECF Nos. 12, 15, 16.[5]

## II.    LEGAL STANDARDS

R2 Technologies bears the burden of establishing subject-matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992). In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

---

[4] Defendants assert that the State Department's website lists both applications as "refused," ECF No. 12, at 3-4 & n.2, but the court cannot verify this without the applicant's passport numbers.

[5] It does not appear that R2 Technologies effected service on Mr. Hodges and Mr. Hankey, *see* Fed. R. Civ. P. 4(i)(2), but Defendants have waived any objection to service by failing to raise it in their motion to dismiss, *id.* R. 12(h)(1).

4

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in R2 Technologies' favor. *Id.*

### III.   DISCUSSION

Defendants raise myriad arguments for dismissal under Rule 12(b)(1) and (b)(6), including arguments about standing, nonreviewability, and failure to state a claim. *See generally* ECF No. 12. These arguments have been raised in scores of cases in this district, providing a wealth of persuasive authority for the court. *See, e.g.*, *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464 (D.D.C. June 4, 2024); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1 (D.D.C. 2022); *Shen v. Pompeo*, No. 20-CV-1263, 2021 WL 1246025 (D.D.C. Mar. 24, 2021).

#### A.   Standing

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that R2 Technologies "must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). To satisfy the constitutional requirement for standing, R2 Technologies must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and

5

(3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61).

Here, the Secretary of State contests the redressability prong of standing. Specifically, he argues that he cannot provide the requested relief, meaning that he should be dismissed from the suit. ECF No. 12, at 7; ECF No. 16, at 1. The Secretary correctly acknowledges that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). But R2 Technologies does not seek to have Mr. Kandasamy's and Mr. Kuruba's visa applications revised; rather, it seeks to have the adjudications completed. *See* ECF No. 11, at 10. As numerous courts in this district have recognized, decisions on the merits are distinct from decisions about timing. *See, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d at 10. "[N]othing . . . precludes the Secretary [of State] . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'" *Id.* (fifth, sixth, and seventh alterations in original) (quoting 5 U.S.C. § 555(b)). Because the Secretary could play a role in the pace of visa adjudications, an order from this court directing him to move more quickly would likely redress R2 Technologies' harms. *See Lujan*, 504 U.S. at 561. Accordingly, R2 Technologies has satisfied the redressability prong of standing.

### B.   Consular Nonreviewability and Non-Discretionary Duty

Defendants next raise two non-standing threshold challenges: (1) that the doctrine of consular nonreviewability bars R2 Technologies' claims, ECF No. 12, at 8-12, and (2) that R2

Technologies fails to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 12-18.  The court is unpersuaded.

First, Defendants argue that the doctrine of consular nonreviewability prevents this court from reaching the merits.  *Id.* at 9.  In the context of visa adjudications, consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise."  *Baan Rao Thai Rest.*, 985 F.3d at 1024.  "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision."  *Al-Gharawy*, 617 F. Supp. 3d at 11.  Mr. Kandasamy's and Mr. Kuruba's visa applications remain in administrative processing.  *See* ECF No. 11 ¶ 18.  Thus, the doctrine does not apply.

Second, Defendants contend that R2 Technologies has failed to meet the threshold statutory requirements to bring a mandamus claim—specifically, that there is "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists"—or a related claim of unreasonable delay under the APA.  ECF No. 12, at 12 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)).  Defendants argue that R2 Technologies cannot identify a non-discretionary duty to adjudicate a visa application.  *Id.* at 13.[6]

Several courts in this district have concluded that there is a duty to complete adjudication of visa applications, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time."  *Rashidian v. Garland*, No. 23-CV-1187,

---

[6] While Defendants frame their argument in terms of "readjudicating," as explained above, a Section 221(g) refusal is not a final adjudication on a visa.

7

2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see, e.g.*, *Kahbasi*, 2024 WL 3202222, at *5, *Ameer*, 2024 WL 2831464, at *4; *Akrayi v. Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). *But see Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *7-12 (D.D.C. June 15, 2023), *aff'd on other grounds*, No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024). This court agrees with the majority view. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").[7]

### C.   Unreasonable Delay

On the merits, Defendants argue that R2 Technologies has failed to state a claim for unreasonable delay on which relief can be granted. ECF No. 12. at 12. R2 Technologies' claims under the Mandamus Act and the APA share the same standards for obtaining relief. *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). "The central question in evaluating 'a

---

[7] In a Notice of Supplemental Authority filed on July 29, 2024, ECF No. 17, Defendants note a recent decision from the D.C. Circuit, *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), in which the Court held that the plaintiff who sought adjudication of her visa application had not shown a clear and indisputable right to relief or a discrete action that the federal defendant had failed to perform. *Id.* at *3. Defendants contend that *Karimova*'s "controlling holding . . . is dispositive of the claims in this case." ECF No. 17, at 1. Not so. *Karimova* is an unpublished opinion, and "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2). This court has considered *Karimova* but declines to follow it.

claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*")). Unreasonable delay is analyzed using six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80). While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The first and fourth factors are most important in the visa context. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023). Weighing the *TRAC* factors here, the court concludes that R2 Technologies has failed to state a claim on which relief can be granted.

The first two factors—the requirement that agencies to follow "a rule of reason" related to their timelines and the influence of a congressionally imposed timeline—are typically considered together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). In essence, these two factors require the court to consider whether "there [is] any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay." *Rashidian*, 2024 WL 1076810, at *6 (quoting

9

*Khazaei*, 2023 WL 6065095, at *6). In analyzing these factors, the court may consider the "complexity of the task at hand." *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102). Both factors favor Defendants.

In its petition, R2 Technologies suggests that there is a congressional timeline based on 8 U.S.C. § 1571(b), which should influence "the reasonableness of the government's pace of adjudication." ECF No. 11 ¶¶ 38, 40 (quoting *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 817 (D.C. Cir. 2024)). That subsection provides:

> It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

8 U.S.C. § 1571(b). But, as R2 Technologies acknowledges, this "statutory timeline is clearly precatory" and not binding. ECF No. 11 ¶ 40 (quoting *Afghan & Iraqi Allies*, 103 F.4th at 817); *see Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement").

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (second alteration in original) (quoting *Sarlak*, 2020 WL 3082018, at *6). The D.C. Circuit has concluded that a four-year delay is not unreasonable. *Da Costa*, 80 F.4th at 342. That said, "the reasonableness of a delay 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful,'" but rather by the facts of the present case. *Liu v. Mayorkas*, No. 20-CV-654, 2021 WL 2115209, at *5 (D.D.C. May 25, 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102). Regardless of the amount of time that an applicant has waited, "[a] delay in adjudication caused by the

agency's failure to follow any rule of reason is, almost tautologically, unreasonable." *Id.* at *3 (denying a motion to dismiss where the plaintiff had waited only two years for a visa decision in part because of the defendants' failure to show that they had followed a "rule of reason").

Here, the court is satisfied that Defendants utilize a rule of reason that does not constitute unreasonable delay. At the time it filed its complaint, R2 Technologies had waited approximately twelve months after Mr. Kandasamy's interview and approximately eleven months after Mr. Kuruba's interview and, by the time of this decision, it will have waited about nineteen months and eighteen months, respectively. *See* ECF No. 12, at 1, 4; *see also Sereshti v. Gaudiosi*, No.24-CV-1288, 2024 WL 4625802, at *9 (D.D.C. Oct. 30, 2024) (explaining that agency delays are measured from the period between "the last action taken by the government and the filing of plaintiff's complaint"). Although such a timeline is undoubtedly frustrating, it does not constitute unreasonable delay when compared to similar cases.

Against this, R2 Technologies asserts that it has "information [that Defendants] have concluded numerous visa applications from persons who were placed in administrative processing about the same time or later than [Mr. Kandasamy and Mr. Kuruba]." ECF No. 11 ¶ 33; *see* ECF No. 15, at 5. As support, R2 Technologies cites the website for the U.S. Consulates and Embassies in India, which states that "[m]ost administrative processing is resolved within 60 days of the visa interview." ECF No. 11 ¶¶ 34; ECF No. 15, at 5. Defendants respond that R2 Technologies is incorrectly relying on a timeline for a different type of visa, and that the relevant website for the type of visa Mr. Kandasamy and Mr. Kuruba seek does not contain a timeline. ECF No. 16, at 11. They further argue that "because the Department's discretionary administrative processes depend on the grounds for refusing a noncitizen's visa, no single straight waiting line is possible." *Id.* at 12. Defendants' points are well taken. R2 Technologies has not pointed to anything suggesting

11

that Defendants are prioritizing the applications of individuals similarly situated to Mr. Kandasamy and Mr. Kuruba over their applications, or that there would not be a basis for doing so given the bevy of reasons that an applicant might end up in administrative processing. Accordingly, the first and second *TRAC* factors favor Defendants.

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also favors Defendants. *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80). The D.C. Circuit has refused to grant relief "where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100 (alterations in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Such would be the case here, where moving Mr. Kandasamy and Mr. Kuruba to the front of the H-1B visa-adjudication line would merely reorder all applicants with no change in the overall timeline. To be sure, the backlog in visa adjudication is troubling. But compelling Defendants to process Mr. Kandasamy's and Mr. Kuruba's visa applications presents an individualized solution to a systemic problem and "would presumably delay other adjudications." *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017)). Additionally, "deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa adjudication context. *Arab*, 600 F. Supp. 3d at 71. It would be improper for the court to intervene and expedite Mr. Kandasamy's and Mr. Kuruba's visa applications at the expense of others. The fourth factor thus weighs in favor of Defendants.

The third and fifth factors concern the impacts of the delay on R2 Technologies. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests

prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). These factors weigh in Defendants' favor. R2 Technologies alleges general harm to its business and reputation, ECF No. 11 ¶ 21, but it does not suggest a threat to anyone's physical health or wellbeing, *see Da Costa*, 80 F.4th at 345 (concluding that the third and fifth *TRAC* factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter"); *Ahmadi v. Scharpf*, No. 23-CV-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (granting the defendants' motion to dismiss despite the plaintiff's claims of healthcare expenses resulting from a visa delay). It is well established that general allegations of economic injury by an employer are generally insufficient to tip the scales. *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005) (finding that a "substantial economic impact on any individual employer or employee" is not likely to significantly change the court's unreasonableness assessment); *Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1256 (S.D. Cal. 2024) (explaining that alleged financial harms to the employer and employee are "insufficient to tip *TRAC* factors three and five in [Plaintiffs'] favor" (alteration in original)). Thus, the third and fifth factors weigh in favor of Defendants.

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). R2 Technologies does not allege that Defendants have acted with impropriety. *See* ECF No. 11 ¶ 42. However, "[a]s *TRAC* directs . . . the lack of plausible allegations of impropriety does not weigh against [the plaintiff]." *Fakhimi v. Dep't of State*, No. 23-CV-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023). Thus, the factor is neutral.

\*   \*   \*

As the D.C. Circuit explained in *Da Costa*, the delays in visa adjudications are "troubling." 80 F.4th at 344. But after weighing the *TRAC* factors, the court concludes that R2 Technologies has not plausibly alleged that the delay with Mr. Kandasamy's and Mr. Kuruba's visas is unreasonable. Accordingly, the court will dismiss the complaint.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant Defendants' motion to dismiss, ECF No. 12. A separate order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   February 7, 2025